UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80171-Cr-Hurley/Vitunac (s)(s)(s)

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DANIEL TROYA,

    Defendant.

_____/



FILED by _____ D.C.

SEP 2 2 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on general Order of Reference from United States
District Judge Daniel T.K. Hurley for disposition of all pending pretrial criminal motions.
Pending before the Court is Defendant's Omnibus Motion To Declare The Federal Death
Penalty Act Unconstitutional, To Dismiss The "Special Findings" From The Indictment, And
To Strike The Notice Of Intent To Seek The Death Penalty (DE 375), filed May 30, 2008.
The Government filed its Response (DE 398) on July 2, 2008. This matter is ripe for
review.

The Defendant is charged by Third Superseding Indictment (DE 305) with the
following: count 1 - conspiracy to possess with intent to distribute 50+ grams of crack
cocaine and 5 kilos of cocaine powder, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) and
(b)(1)(B); counts 3 and 14 - felon in possession of a firearm, in violation of 18 U.S.C. §
922(g); count 5 - conspiracy to commit carjacking, in violation of 18 U.S.C. § 371; count 6 -
armed carjacking resulting in death, in violation of 18 U.S.C. § 2119(3); counts 7 through
10 - using a firearm in relation to a crime of violence, that is a drug conspiracy and armed

carjacking, and in the course of this violation causing the death of a person through the use of a firearm, which killing is murder as defined in 18 U.S.C. § 1111, in the perpetration of, or attempt to perpetrate a robbery, in violation of 18 U.S.C. §§ 924(j)(1) and 2; count 13 - possession with intent to distribute 50+ grams of crack and 500+ grams of cocaine powder, in violation of 21 U.S.C. § 841(a)(1), and (b)(1)(A)-(b)(1)(B); and count 15 - use of a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

The Third Superseding Indictment contains a Notice of Special Findings (DE 305), which states that the "Grand Jury further finds . . . the following factors exist regarding defendants Daniel Troya and Richardo Sanchez, Jr., and their commission of the offenses charged in counts 6 through 10." Thereafter, the Notice of Special Findings lists two statutory factors enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D), and four statutory factors enumerated under 18 U.S.C. § 3592(c).

On February 2, 2008, the Government notified the Defendant that it will seek the death penalty in the event of Defendant's conviction for the offenses charged in counts six through ten of the Third Superseding Indictment. The Government's Notice of Intent to Seek the Death Penalty Against Defendant Daniel Troya (DE 311) sets out four statutory proportionality factors, four statutory factors, and five non-statutory aggravating factors.

## THE PARTIES' CONTENTIONS

Defendant's ninety-seven page Omnibus Motion contains eight sections which are further divided into multiple subparts. In total, Defendant's Motion raises twenty-three issues. For simplicity, the Court includes the parties contentions within the discussion of each of the sections and their respective subparts. For consistency, the Court refers to the

2

charging and notice documents in this case, as titled in the docket.[1] These documents include the Third Superseding Indictment (DE 305), the Notice of Special Findings ("Special Findings") (contained within the Third Superseding Indictment), and the Notice of Intent to Seek the Death Penalty Against Defendant Daniel Troya ("Notice of Intent to Seek the Death Penalty")(DE 311). Finally, the Court notes that much of Defendant's Motion is case law with scant analysis to the facts of this case. Many of the arguments presented by Defendant have been addressed and rejected by federal courts. Additionally, many of the issues raised by Defendant in the instant Motion have already been raised by Defendant in previous Motions.

## DISCUSSION

Defendant's ninety-seven page Omnibus Motion presents a multitude of challenges to the sufficiency and constitutionality of the Federal Death Penalty Act ("FDPA"), the Third Superseding Indictment, the Notice of Special Findings contained therein, and, to the Government's Notice of Intent to Seek the Death Penalty. As a threshold matter, the Court sets forth a brief discussion of the FDPA.

## The Federal Death Penalty Act

The FDPA is codified in 18 U.S.C. §§ 3591 - 3598. It was signed into law on September 13, 1994. To be eligible for the death penalty under the FDPA, a defendant must first be found guilty of a death penalty eligible crime beyond a reasonable doubt by a unanimous jury. 18 U.S.C. § 3591(a)(2). Murder is a death penalty eligible crime. See 18 U.S.C. § 1111(b). After finding a defendant guilty of a death penalty eligible crime, a jury must make several findings before it may consider imposing the death penalty. First, it

---

[1] The Court notes that the pleadings are replete with references to the charging and notice documents as the "Death Notice," "findings," "indictment," and "notice" = such inconsistency invites error.

must find the existence of at least one of four statutory mens rea requirements. 18 U.S.C.

§ 3591(a)(2). The FDPA provides, in pertinent part, that a sentence of death may be

imposed if it is proved beyond a reasonable doubt at a hearing that the defendant:

> "(A) intentionally killed the victim;
> (B) intentionally inflicted serious bodily injury that
> resulted in the death of the victim;
> (C) intentionally participated in an act, contemplating
> that the life of a person would be taken or intending that
> lethal force would be used in connection with a person,
> other than one of the participants in the offense, and the
> victim died as a direct result of the act; or
> (D) intentionally and specifically engaged in an act of
> violence, knowing that the act created a grave risk of
> death to a person, other than one of the participants in
> the offense, such that participation in the act constituted
> a reckless disregard for human life and the victim died
> as a result of the act . . . ."

Id.

If the jury finds one of the mens rea requirements beyond a reasonable doubt, it

must then find that at least one of sixteen statutory aggravating factors exists beyond a

reasonable doubt. See 18 U.S.C. § 3592(c). The statute lists sixteen aggravating factors

which are generally referred to as the statutory aggravating factors. Id. At the conclusion

of the list, the FDPA states that the jury "may consider whether any other aggravating

factor for which notice has been given exists." 18 U.S.C. § 3592(c). These "other"

aggravating factors are generally referred to as "non-statutory" aggravating factors. The

FDPA requires the Government, at a reasonable time before trial, to file a notice stating

that a sentence of death is justified and setting forth the aggravating factor or factors the

Government intends to rely upon to justify a sentence of death. 18 U.S.C. § 3592(a)(1).

In sum, a defendant is death penalty eligible only after the jury finds beyond a reasonable

doubt that (1) the defendant is guilty of a death penalty eligible offense, (2) the defendant

possessed the necessary mens rea, and (3) at least one statutory aggravating factor

4

exists. 18 U.S.C. § 3591(a).

The next phase in the capital proceeding is the sentencing hearing. The sentencing hearing is conducted before a jury or, if the Defendant requests and the Government agrees, it may be conducted before the court. 18 U.S.C. § 3593(b). At the sentencing hearing, the Federal Rules of Evidence do not apply, "except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). The Government retains the burden of proving any aggravating factor beyond a reasonable doubt. Id. The defendant need only prove the existence of any mitigating factor by a preponderance of the evidence. Id. The FDPA states that:

> "[a] finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established. A finding with respect to any aggravating factor must be unanimous."

Id.

Although the aggravating factors must be found beyond a reasonable doubt, the FDPA is silent as to whether the jury must find beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors. 18 U.S.C. § 3593(e). The FDPA simply states that:

> "the jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death."

Id.

5

"Based upon this consideration," the FDPA requires the fact finder to return a recommendation on "whether the defendant should be sentenced to death, life imprisonment without possibility of release, or some lesser sentence." Id. A jury's recommendation of a sentence of death or life imprisonment without possibility of release is binding on the sentencing judge. 18 U.S.C. § 3594.

## Section I
## Constitutional Challenge to the
## Non-Statutory Aggravating Factors in Light of Ring v. Arizona

Defendant moves the Court to declare the FDPA unconstitutional, to strike the Notice of Special Findings from the Third Superseding Indictment, and to dismiss the Government's Notice of Intent to Seek the Death Penalty on the ground that the FDPA fails to comply with the Supreme Court decision of Ring v. Arizona, 536 U.S. 584 (2002). Defendant presents this argument in two parts: (1) that the FDPA violates the Sixth Amendment because it fails to require the Government to submit to the Grand Jury, and, charge in the indictment the non-statutory aggravating factors which it intends to rely upon to justify the death penalty; and (2) that as to the imposition of the death sentence, the FDPA is facially unconstitutional because the jury does not find beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors. The Government submits that Defendant's argument has no merit and should be denied. In support, the Government maintains that Defendant's arguments have been addressed and rejected by the Eleventh Circuit Court of Appeals and various other federal courts.

(1).    Non-Statutory Aggravating Factors:

In Ring, the Supreme Court struck down Arizona's capital sentencing scheme, finding that because Arizona's enumerated aggravating factors operate as "the functional

6

equivalent of an element of a greater offense," the Sixth Amendment requires that a jury, and not the presiding judge, find the aggravating factors necessary for imposition of the death penalty. Ring, 536 U.S. at 609. This conclusion relied upon the Court's earlier decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), "which held that the Sixth Amendment does not permit a defendant to be 'expose[d] . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone' . . . even if the State characterizes the additional findings made by the judge as 'sentencing factor[s].'" Ring, 536 U.S. at 588-89 (quoting Apprendi, 530 U.S. at 483, 492). "Capital defendants, no less than noncapital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." Ring, 536 U.S. at 589.

Defendant argues that the Supreme Court's holdings in Apprendi v. New Jersey, Blakely v. Washington, and Ring v. Arizona, collectively require that any nonstatutory aggravating factor in a capital case must be alleged in the indictment, and that failure to do so is constitutional error. The Court finds Defendant's argument without merit as a matter of law. Eleventh Circuit precedent holds that there is no constitutional requirement that the non-statutory aggravating factors be alleged in the indictment, because these factors do not increase the punishment to which a defendant might be subjected. United States v. Brown, 441 F.3d 1330, 1367 (11th Cir.2006); United States v. LeCroy, 441 F.3d 914, 920 (11th Cir. 2006). In Brown, the Eleventh Circuit summarized why the non-statutory aggravating factors need not be included in an indictment for the indictment to be constitutionally sufficient:

> "[t]he non-statutory aggravating factors, although relevant to determining whether a jury decides to impose the death penalty, do not make a defendant statutorily eligible for any

7

> sentence that could not be otherwise imposed in their
> absence. 'They are neither sufficient nor necessary under
> the FDPA for a sentence of death.' Purkey, 428 F.3d at 749.
> This rule comports with recent Supreme Court precedent
> because a non-statutory aggravating factor does not
> "increase the penalty for a crime beyond the prescribed
> statutory maximum," see Apprendi v. New Jersey, 530 U.S.
> 466, 490 (2000), nor does it somehow allow the imposition
> of a more severe sentence than could have been imposed
> without it. See Blakely v. Washington, 542 U.S. 296, 303-04
> (2004). Thus, a non-statutory aggravating factor is not one
> of these 'facts legally essential to the punishment' that must
> be included within the indictment.'"

Brown, 441 F.3d at 1368.

In the present case, Defendant's argument is fatally flawed because the non-statutory aggravating factors do not operate to increase the potential punishment the Defendant may receive. To be eligible for the death penalty, the Government must prove at least one statutory aggravating factor beyond a reasonable doubt. United States v. LeCroy, 441 F.3d 914, 920-23 (11th. Cir. 2006). The jury may only consider the non-statutory aggravating factors after it has satisfied the steps necessary to reach a finding that a defendant is death penalty eligible. See United States v. Bourgeois, 423 F.3d 501, 507-08 (5th Cir. 2005); United States v. Higgs, 353 F.3d 281, 298 (4th Cir. 2003).

Pursuant to Eleventh Circuit precedent, and the findings of federal courts across the nation, the Court finds that there is no constitutional requirement that the non-statutory aggravating factors be pled by the Government in an indictment. Brown, 441 F.3d at 1367; LeCroy, 441 F.3d at 920; United States v. Allen, 406 F.3d 940, 949 (8th Cir.2005); United States v. Barnette, 390 F.3d 775, 788-90 (4th Cir.2004), vacated on other grounds; United States v. Robinson, 367 F.3d 278, 290(5th Cir.2004); United States v. Sampson, 486 F.3d 13, 20-23 (1st Cir. 2007).

(2). Facial Challenge to the FDPA:

8

Defendant argues that the FDPA is facially unconstitutional because it does not require the jury, during the penalty phase, to find beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors before recommending a sentence of death. Defendant argues that in light of Ring and Apprendi, the FDPA's silence on the standard of proof necessary to make this finding renders the statute unconstitutional on its face. The Government maintains that Defendant's argument is defective because once the jury has fulfilled its responsibilities and found the Defendant death eligible, the maximum penalty can go no higher and "since the maximum penalty cannot then be raised any higher, Apprendi does not apply."

A facial challenge to a federal statute is difficult to mount. United States v. Salerno, 481 U.S. 739, 745 (1987). To succeed on a facial challenge to the FDPA, the Defendant must establish that no set of circumstances exists under which the FDPA would be valid. Id. Here, Defendant has failed to meet this exacting burden for the following reasons.

First, in Ring and its progeny, the Supreme Court holds that capital defendants are entitled "to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." Ring, 536 U.S. at 589. Accordingly, "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact-no matter how the State labels it-must be found by a jury beyond a reasonable doubt." Ring, 536 U.S. at 602 (citing Apprendi, 530 U.S. at 482-83). In Ring, Arizona's capital sentencing scheme was unconstitutional because the State's enumerated aggravating factors operated "as the functional equivalent of an element of a greater offense" and the "Sixth Amendment requires that they be found by a jury." Ring, 536 U.S. at 609; Apprendi, 530 U.S. at 494, n.19. Defendant's reliance on Ring is misplaced because the non-statutory aggravating factors do not operate as the functional equivalent of an element of

9

a greater offense and increase the punishment to which a defendant might be subjected,

but instead serve the purpose of aiding the fact finder in selecting the appropriate

sentence. Higgs, 353 F.3d at 298-99; United States v. Lentz, 225 F. Supp. 2d 672, 681-82

(E.D. Va. 2002). A summary of the steps necessary to find a defendant death penalty

eligible under the FDPA follows:

> "First, the jury must determine whether [the defendant]
> had the requisite intent to commit the death-eligible
> offense . 18 U .S .C . § 3591(a) . If the jury unanimously
> finds beyond a reasonable doubt that intent is
> established, it moves to the next step in the penalty
> process. If the jury does not so find, the deliberations are
> over and the death penalty may not be imposed.
>
> Assuming the jury finds the requisite intent, it must then
> consider the statutory aggravating factors alleged by the
> government in its notice to seek the death penalty . The
> statutory aggravating factors are listed at 18 U .S .C . §
> 3592(c)(1)-(15). The jury must determine whether the
> government has proven at least one of the statutory
> factors alleged beyond a reasonable doubt . 18 U .S .C .
> § 3593(c). If the jury unanimously so finds, it moves to the
> next step of the penalty process. If not, the deliberations
> are over and the death penalty may not be imposed. 18
> U .S .C . § 3593(d)."

United States v. Nguyen, 928 F. Supp. 1525, 1532 (D. Kansas 1996).

Contrary to Defendant's argument, the non-statutory aggravating factors do not

operate to increase the potential punishment he may receive. The non-statutory

aggravating factors are only considered after the fact finder has found the Defendant

statutorily eligible for the death penalty. At that point, the maximum penalty the defendant

can receive is the death penalty. See United States v. Paul, 217 F.3d 989, 1001 (8th Cir.

2000).

Accordingly, Defendant's argument that the jury's weighing of the aggravating

factors and the mitigating factors is an "element" that increases the defendant's maximum

sentence – is incorrect. Once the jury reaches the point of weighing aggravating and mitigating factors, it will have already found the Defendant death penalty eligible and established the statutory maximum sentence - there is no possible increase that can be made to Defendant's sentence. Accordingly, a jury's weighing of the aggravating factors against the mitigating factors in the final phase of their inquiry does nothing to increase the sentence authorized for the defendant, and is therefore, not subject to Apprendi or the reasonable doubt standard. United States v. Diaz, 2007 WL 656831 (N.D. Cal. 2007). This Court agrees with our sister court and other federal courts that have rejected similar arguments as those raised here by the Defendant. Diaz, 2007 WL 656831 (N.D. Ca. 2007); United States v. Talik, 2007 WL 4570704 (N.D.W.Va. 2007); United States v. Gooch, 2006 WL 3780781 (D.D.C. 2006); United States v. Natson, 444 F.Supp. 2d 1296, 1304 (M.D. Ga. 2006). For the foregoing reasons, the Court finds that the FDPA does not run afoul of Ring. The FDPA is constitutional on its face and it passes muster under the Sixth Amendment.

## Section II.
## Fifth and Sixth Amendment Challenge to the Indictment

In section II, Defendant presents three constitutional challenges, they are: (1) that the return of the Special Findings by the Grand Jury absent the Grand Jury's knowledge that such findings would subject Defendant to the death penalty, violates Defendant's Fifth and Sixth Amendment rights; (2) that the indictment violates the Defendant's Fifth and Sixth Amendment rights because it fails to allege all the elements of a capital crime; and (3) that the non-statutory aggravating factors alleged in the Government's Notice of Intent to Seek the Death Penalty violates the Fifth Amendment Indictment Clause because they were not found by the Grand Jury and alleged in the Third Superseding Indictment. Defendant asks the Court to dismiss the Notice of Intent to Seek the Death Penalty, to strike the Special Findings, and, dismiss the Third Superseding Indictment as fatally

11

defective. The Court finds that Defendant's contentions are without merit for the reasons set forth below.

(1).    Indictment Clause Violation:

The Court finds that the Third Superseding Indictment and the Special Findings contained therein satisfies the requirements of the Fifth and Sixth Amendment. The Indictment Clause of the Fifth Amendment provides in part that "[n]o person shall be held to answer for a capital, or otherwise, infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The Fifth Amendment's Indictment Clause serves two critical functions. First, it acts as a check on prosecutorial power. Branzburg v. Hayes, 408 U.S. 665, 686-87 (1972)(explaining that "the ancient role of the grand jury . . . [is a] dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions). Second, it provides notice to the defendant of the charges against which he/she must defend. See Hamling v. United States, 418 U.S. 87, 117 (1974).

The Indictment Clause of the Fifth Amendment and the notice requirement of the Sixth Amendment require that a defendant "be notified of the charges against him through a recitation of the elements of the offense and a description of the charges in sufficient detail to allow the defendant to maintain that future charges relating to the same conduct are precluded by a previous conviction or acquittal." Natson, 444 F. Supp. 2d at 1305. An indictment need only charge the elements necessary to constitute the offense, and need not charge the ultimate punishment sought for the offense committed. Hamling, 418 U.S. at 117. Because there is no requirement that an indictment charge the punishment sought there is no requirement that the grand jury be informed as to the ultimate punishment. See Natson, 444 F. Supp. 2d at 1305 (holding in a death penalty case that "since neither the

Fifth or Sixth Amendments required the Indictment to include the ultimate punishment sought for the offenses, no reason existed for the grand jury to even know what that punishment may be"); Diaz, 2007 WL 656831 at 3 (finding in a death penalty case no reason for the grand jury to be informed of the potential punishment arising out "of the special findings").

In the present case, Defendant's arguments concerning the Special Findings are without basis in law or fact. Factually, Defendant's contention that the Grand Jury did not fulfil its constitutional role because "there is no indication that the Grand Jury knew that its special findings might make Defendant eligible for the death penalty" is defeated by the plain language of the Special Findings. (DE 305) The Special Findings uses the words "capital offense." The words "capital offense" appear in the Special Findings as language in support of one of the statutory factors. The Special Findings state that the "defendant, Daniel Troya, committed the capital offense . . ." for pecuniary gain. This section continues to allege that co-defendant Sanchez also committed [the] capital offense for pecuniary gain.

Even assuming *arguendo* that there was absolutely no reference to a capital offense in the Special Findings, the case law is clear that there is no constitutional requirement that the grand jury be informed of the potential punishment arising out of the Special Findings. Hamling, 418 U.S. at 117; Natson, 444 F. Supp. at 1305. Here, the Third Superseding Indictment conforms to the constitutional requirements of Hamling and charges the elements necessary to constitute the offense. Hamling, 418 U.S. at 117. The Court finds that the Third Superceding Indictment and the Special Findings provide Defendant with the constitutional safeguards embodied in the Fifth and Sixth Amendment.

(2). Failure to Allege All Elements of the Capital Offense:

13

Defendant maintains that the Third Superseding Indictment violates his Fifth and Sixth Amendment rights because all of the elements of the capital offense were not submitted to the Grand Jury for consideration. Here, Defendant essentially reworks his argument from Section I which contends that the weighing of aggravating factors versus mitigating factors is a "necessary element" of the capital offense. In this section, Defendant argues that the indictment is defective because it fails to include this "necessary element." Defendant speculates that the Grand Jury was "uninformed" of this "element" or "did not make a finding that the aggravating factors outweigh the mitigating factors." Defendant fails to cite any case law to support this contention. This Court has already addressed this argument at length in Section I and incorporates by reference that section in full. Suffice to state, this Court finds that the weighing of the aggravating factors against the mitigating factors is not a necessary element of the capital offense. Importantly, this Court has addressed the sufficiency of the Third Superseding Indictment and Special Findings. The Court incorporates by reference its February 19, 2008 Order (DE 307) denying co-defendant Richardo Sanchez's motion for a bill of particulars. In that Order, the Court holds that the Third Superseding Indictment "provides Defendants with the requisite particularity necessary to adequately notify them of the essential elements of the charged offenses." The Court finds that the Third Superseding Indictment charges all required elements of the capital crimes.

(3). Violation of the Fifth Amendment and the Indictment Clause:

Defendant alleges that the non-statutory aggravating factors alleged in the Government's Notice of Intent to Seek the Death Penalty violate the Fifth Amendment's Indictment Clause because they were not found by the Grand Jury and alleged in the Third Superseding Indictment. Defendant relies upon United States v. Green, 372 F.

Supp. 2d 168 (D.Mass. 2005) to support this contention. In Green, the court in a narrow ruling, struck certain non-statutory aggravating factors listed in the government's notice of intent because they were "uniquely prejudicial." Green, 372 F. Supp. 2d at 182-83.

The Eleventh Circuit has soundly rejected Defendant's argument that non-statutory aggravating factors must be alleged in the indictment. LeCroy, 441 F.3d at 922. The Eleventh Circuit explains that "the non-statutory aggravating factors, although relevant to determining whether a jury decides to impose the death penalty, do not make a defendant statutorily eligible for any sentence that could not be otherwise imposed in their absence." Brown, 441 F.3d at 1368. The Eleventh Circuit further reasoned that a "non-statutory aggravating factor is not one of those facts legally essential to the punishment" that must be "included within the indictment" because it "does not increase the penalty for a crime beyond the prescribed statutory maximum" nor does it "somehow allow the imposition of a more severe sentence than could have been imposed without it." Id. (internal quotations omitted).

In the present case, the Court declines to reject Eleventh Circuit precedent, and the sound reasoning of LeCroy and Brown. Accordingly, the Court finds Defendant's argument that the non-statutory factors must be alleged in the indictment without merit.

## Section III.
### Constitutional Challenge to the Evidentiary Standard of the FDPA

In this section, Defendant argues that the FDPA is unconstitutional in light of Ring (1) because the "relaxed evidentiary standard" it employs at the sentencing phase violates Defendant's right to due process; and (2) because the FDPA unconstitutionally denies Defendant the presumption of innocence during the sentencing phase.

(1). FDPA's Relaxed Evidentiary Standard:

15

The FDPA provides for a "relaxed evidentiary standard" during the sentencing

hearing in order to give the jury an opportunity to hear all relevant and reliable information,

unrestrained by the Federal Rules of Evidence. United States v. Jones, 132 F. 3d 232,

241 (5th Cir. 1998), aff'g sub nom Jones v. United States, 527 U.S. 373 (1999). As set

forth in the FDPA:

> "At the sentencing hearing, information may be presented as
> to any matter relevant to the sentence, including any
> mitigating or aggravating factor permitted or required to be
> considered under section 3592. . . . The defendant may
> present any information relevant to a mitigating factor. The
> government may present any information relevant to an
> aggravating factor for which notice has been provided under
> subsection (a). Information is admissible regardless of its
> admissibility under the rules governing admission of evidence
> at criminal trials except that information may be excluded if
> its probative value is outweighed by the danger of creating
> unfair prejudice, confusing the issues, or misleading the jury.
> . . . The government and the defendant shall be permitted to
> rebut any information received at the hearing, and shall be
> given fair opportunity to present argument as to the
> adequacy of the information to establish the existence of any
> aggravating or mitigating factor, and as to the
> appropriateness in the case of imposing a sentence of death.
> . . . The burden of establishing the existence of any
> aggravating factor is on the government, and is not satisfied
> unless the existence of such a factor is established beyond
> a reasonable doubt. The burden of establishing the existence
> of any mitigating factor is on the defendant, and is not
> satisfied unless the existence of such a factor is established
> by a preponderance of the information."

18 U.S.C. § 3593.

Defendant argues the FDPA's relaxed evidentiary standard fails to provide him with

constitutionally adequate protection because it authorizes admission of evidence at the

penalty phase that would not be admissible under the Federal Rules of Evidence.

Defendant submits that in light of Ring, the FDPA's relaxed evidentiary rule violates due

process and the confrontation clause. Defendant argues that the FDPA's relaxed

16

evidentiary standard fails to import procedures required by Ring v. Arizona, 536 U.S. 584 (2002), Crawford v. Washington, 541 U.S. 36 (2004)[2], and Sattazahn v. Pennsylvania, 537 U.S. 101 (2003). Defendant argues that Congress must rewrite the FDPA to conform to Ring, and, to cure the facial unconstitutionality of the FDPA.

The Government maintains that nothing in Ring makes the Federal Rules of Evidence the test for compliance with constitutional guarantees. The Government argues that the FDPA "dispenses with non-constitutional evidentiary rules" during the penalty phase of the capital sentencing hearing so as to promote "Eighth Amendment interests in individualized sentencing" and the FDPA neither "authorizes trial courts to admit constitutionally prohibited evidence nor precludes them from excluding such evidence if it is offered."

The Court construes Defendant's instant argument to be a facial challenge to the constitutionality of the FDPA's evidentiary standard. To the extent that Defendant also argues that the evidentiary standard of the FDPA, as applied to him, is unconstitutional, the Court finds Defendant's argument not ripe for review. A facial challenge to a federal statute is difficult to mount. United States v. Salerno, 481 U.S. 739, 745 (1987). To succeed on a facial challenge to the FDPA the Defendant must establish that no set of circumstances exists under which the FDPA would be valid. Id. Here, Defendant has failed to meet this burden for the reasons set forth below.

During the sentencing hearing, the Defendant and the Government may introduce information "limited by the caveat that such information be relevant, reliable, and its

---

[2] To the extent that Defendant uses Crawford v. Washington in the instant Motion to raise a Confrontation Clause argument concerning the use of testimonial hearsay at the sentencing phase, the Court finds this argument premature.

probative value outweigh the danger of unfair prejudice." Jones, 132 F. 3d at 241. Long standing Supreme Court jurisprudence recognizes that the jury or sentencing judge in a capital sentencing proceeding must have the most information possible concerning the defendant's life and characteristics for consideration of the appropriate sentence. Williams v. New York, 337 U.S. 241, 247 (1949). "[M]odern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." Id. In the 1976 case of Gregg v. Georgia, the Supreme Court once again emphasized the importance of a complete picture at the capital sentencing hearing, finding that "so long as the evidence introduced and the arguments made . . . do not prejudice a defendant, it is preferable not to impose restrictions." Gregg v. Georgia, 428 U.S. 153, 204 (1976). "We think it desirable for the jury to have as much information before it as possible when it makes a sentencing decision." Id. At the same time, the Supreme Court has emphasized that heightened reliability is essential to the capital process. Murray v. Giarratano, 492 U.S. 1, 8-9 (1989). "[T]he qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." Lowenfield v. Phelps, 484 U.S. 231, 238-39 (1988)(internal quotation omitted).

The Court recognizes the inherent tension in the FDPA, between the need for heightened reliability in death penalty cases and the need for the jury to have the most information possible, and, finds that the FDPA's relaxed evidentiary rule does not offend the constitution. United States v. Fulks, 454 F.3d 410, 438 (4th Cir. 2006); United States v. Lee, 374 F.3d 637, 648 (8th Cir. 2004); United States v. Fell, 360 F.3d 135, 138 (2nd Cir. 2004); Jones, 132 F.3d at 242; United States v. Haynes, 269 F.Supp. 2d at 983-87;

United States v. Battle, 264 F. Supp. 2d 1088, 1105-06 (N.D. Ga. 2003); United States v. Minerd, 176 F. Supp. 2d 424, 435-36 (W.D. Pa. 2001); United States v. Cooper, 91 F. Supp. 2d 90, 98 (D.D.C. 2000); United States v. Nguyen, 928 F. Supp. 1525, 1546-47 (D.Kan. 1996); United States v. McVeigh, 944 F. Supp. 1478, 1487 (D. Colo. 1996). In so finding, these courts have consistently emphasized that to achieve the heightened reliability at capital sentencing, "the admission of more rather than less evidence during the penalty phase increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense." Lee,374 F.3d at 648 (citing Fell, 300 F.3d at 143-46).

The Court further finds that the FDPA evidentiary standard as set forth in § 3593(c) provides Defendant with a level of protection that ensures that he receive a fundamentally fair trial. Although the FDPA's relaxed evidentiary rule dispenses with the Federal Rules of Evidence, it comports with constitutional due process and promotes Eighth Amendment interests by its elastic ability to accommodate the interests and tensions unique to a capital sentencing proceeding. The Court finds no legal basis, in light of Ring, which requires the Federal Rules of Evidence to be employed as the evidentiary standard under the FDPA.

The Court finds that the FDPA's "relaxed evidentiary rule" does not violate Due Process or the Confrontation Clause. Capital punishment demands heightened reliability. This Court declines Defendant's invitation to reject long-standing constitutional jurisprudence supporting that more evidence, not less, should be submitted to the jury at the sentencing phase so that the jury may have full and complete information about the

defendant upon whom they will recommend sentence.[3] The FDPA expressly allows the trial judge to exclude evidence if its probative value is outweighed by the danger of creating unfair prejudice, or if it confuses the issues or misleads the jury. 18 U.S.C. § 3593(c). This Court finds these constitutional safeguards sufficient procedural protections for evidentiary reliability. Accordingly, Defendant's facial challenge to the FDPA on the ground that its "relaxed evidentiary standard" is unconstitutional must fail.

(2).   Presumption of Innocence:

Defendant alleges that the FDPA violates due process because it fails to include a presumption of innocence for a defendant at the sentencing phase. The Government submits Defendant's claim that the "FDPA unconstitutionally denies defendants the presumption of innocence is wholly without merit."

The Court rejects Defendant's contentions that the FDPA prejudices defendants during the sentencing phase because it denies them the presumption of innocence. The Supreme Court holds that "[o]nce the defendant has been convicted fairly in the guilt phase of the trial, the presumption of innocence disappears." Delo v. Lashley, 507 U.S. 272, 278-79 (1993). Defendant's instant Motion argues that under the FDPA "[n]ot only is a defendant without the presumption of innocence, but the jury is told the defendant is guilty." Defendant further argues that "[n]o instruction on reasonable doubt can remedy that defect." Defendant's argument turns a blind eye to the fact that at the sentencing stage of a death penalty case the jury is not told that the defendant is guilty - the jury has already previously found the defendant guilty.

_____

[3] Pursuant to the FDPA, "the jury by unanimous vote, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." 18 U.S.C. §3593(e).

In the penalty phase of a capital case, "an instruction on the presumption of innocence" would cause the jury "confusion." United States v. Cheever, 423 F. Supp. 2d 1181, 1196 (D. Kan. 2006). "The confusion arises from the fact that, at the penalty [sentencing] phase of an FDPA proceeding, the jury has already found the defendant guilty of the underlying murder charge." Id. At the penalty phase, it is sufficient that the jury is clearly instructed that it is the burden of the government to prove beyond a reasonable doubt "everything required to make [a] defendant eligible for the death penalty, and everything required for the jury to return a recommendation of death, as contemplated by both the FDPA and the Constitution." Diaz, 2007 WL 656831 at 7-8. The court in Diaz further reasoned that pursuant to the FDPA at the sentencing phase "the defendant has no duty to prove anything, unless the defendant intends to prove mitigating factors by a preponderance of the evidence." Id. Accordingly, the Court finds that given the safeguards inherent in the FDPA's sentencing structure, the absence of an express provision as to a defendant's presumption of innocence at the sentencing phase does not violate due process.

## Section IV.
## The Double Jeopardy Clause

Here, Defendant presents two constitutional challenges. As alleged these challenges contend that: (1) if convicted of counts six through ten, the Defendant will be punished twice for the same offense in violation of the Double Jeopardy Clause; and (2) the Defendant's Fifth and Eighth Amendment rights are violated, if upon conviction, the Government submits counts six to ten (multiple murder counts) to the jury.

(1).   Double Jeopardy:

To support a claim of double jeopardy, a defendant must show that the two

offenses charged are in law and fact the same offense. United States v. Benefield, 874 F.2d 1503, 1505 (11th Cir. 1989). Double jeopardy issues are analyzed under the Supreme Court test established in Blockburger v. United States, 284 U.S. 299 (1932). "Under Blockburger, when a single, completed criminal transaction violates two or more criminal statutes, the Double Jeopardy Clause does not shield a defendant against prosecution under one or more of the applicable statutes so long as 'each statute requires proof of an additional fact which the other does not . . . .'" United States v. Williams, 527 F.3d 1235, 1240 (11th Cir. 2008)(citing Blockburger, 248 U.S. at 304).

Defendant maintains that counts seven through ten of the Third Superseding Indictment charge him with violating "[s]ections 1111 and 924(j)." Defendant argues that these counts are "unquestionably the same offense" because a violation of section 1111 and 924(j) is essentially the same offense. Defendant also argues that if he is convicted of count six (armed carjacking resulting in death) and, any or all of the offenses charged in counts seven through ten, such conviction should be shielded by the Double Jeopardy Clause because the conviction is essentially for the same crime. The Government argues that Defendant's double jeopardy allegation "has no application to the present case and should be rejected" because Defendant is not charged with a violation of 18 U.S.C. § 1111, and count six and counts seven through ten are not identical.

Here, the Third Superseding Indictment charges the Defendant with five capital crimes. In count six the Defendant is charged with armed carjacking resulting in death, in violation of 18 U.S.C. § 2119(3); in counts seven through ten the Defendant is charged with using a firearm in relation to a crime of violence, that is a drug conspiracy and armed carjacking, and in the course of this violation causing the death of a person through the use of a firearm, which killing is murder as defined in 18 U.S.C. § 1111, in the perpetration

of, or attempt to perpetrate a robbery, in violation of 18 U.S.C. § 924(j)(1). In counts seven through ten, Defendant is charged with is using a firearm in relation to a crime of violence and in the course of using a firearm in a crime of violence causing the death of a person through the use of a firearm. The inclusion of 18 U.S.C. § 1111 in these counts is merely to define "murder" as a crime. The pertinent part of the Third Superseding Indictment which demonstrates how 18 U.S.C. § 1111 was used in the language charging the capital crimes is as follows:

> " . . . which killing is murder as defined in Title 18, United States Code, Section 1111, in that the defendants, with malice aforethought, did unlawfully kill Luis Damian Escobedo by shooting him with the firearm willfully, deliberately, and maliciously, and with premeditation, and in the perpetration of, and attempt to perpetrate, a robbery. In violation of Title 18, United States Code, Sections 924(j)(1) and (2)."

(DE 305).

The crime Defendant is charged with in this offense is a violation of 18 U.S.C. §§ 924(j)(1) and 2 - not 18 U.S.C. § 1111. Instead, 18 U.S.C. § 1111 is used in the charging language of this offense to define "which killing is murder." This section of the United States Code further defines that "[m]urder is the unlawful killing of a human being with malice aforthought." 18 U.S.C. § 1111. The charging language of the Third Superseding Indictment does not allege that the Defendant is charged with violating 18 U.S.C. § 1111. Accordingly, the Court finds Defendant's double jeopardy allegation as to the inclusion of 18 U.S.C. § 1111 in the charging language of the Third Superseding Indictment without merit.

Next, the Court applies the Blockburger test to counts six through ten, to determine if count six and counts seven through ten charge Defendant with essentially the same offense in violation of the Double Jeopardy clause. Count six, the carjacking charge,

23

charges Defendant with a violation of 18 U.S.C. § 2119(3). This offense requires proof concerning the taking of a motor vehicle, which had been transported, shipped and received in interstate and foreign commerce. Counts seven through ten, charge Defendant with using a firearm in relation to a crime of violence, that is a drug conspiracy and armed carjacking, and, in the course of this violation, causing the death of a person through the use of a firearm, in the perpetration of, or attempt to perpetrate a robbery, in violation of 18 U.S.C. §§ 924(j)(1) and 2. Counts seven through ten, unlike count six, do not require proof concerning the taking of the a motor vehicle. There are additional factual differences between counts seven to ten and count six. For example, count six alleges that "Jose Luis Escobedo, Luis Damian Escobedo, Luis Julian Escobedo, and Yessica Guerrero Escobedo" are the victims of the alleged carjacking. Count six further alleges that the alleged carjacking resulted in the deaths of all four victims. Counts seven through ten each relate to a specific victim. Count seven requires proof of the murder of Luis Damian Escobedo. Count eight requires proof of the murder of Luis Julian Escobedo. Count nine requires proof of the murder of Jessica Escobedo. Count ten requires proof of the murder of Jose Luis Escobedo. Accordingly, the Court finds Defendant's Double Jeopardy argument without merit as the offenses at issue are not the same in law or fact.

Additionally, the Court finds Defendant's argument that multiple punishment is unnecessary once a defendant is "convicted of first degree murder [and] is already going to face the most severe penalties available" without any basis in law.

Last, Defendant argues that his Fifth and Eighth Amendment rights are violated by submitting multiple murder counts to the sentencing jury. The Defendant presents no case law in support of this theory. The Government cites the recent prosecution and conviction of Timothy McVeigh for multiple acts of murder, and, the court's subsequent imposition

24

of eleven separate death sentences as demonstration of "the folly of Troya's [Defendant's] claim." See United States v. McVeigh, 153 F.3d 1166 (10th Cir. 1998). The Court finds Defendant's argument wholly without merit.

## V. Notice of Intent to Seek the Death Penalty - Vagueness Challenges

In this section, the issue before the Court is whether the Government's Notice of Intent to Seek the Death Penalty satisfies the constitutional and statutory requirements of adequate notice. Defendant contends the Notice of Intent to Seek the Death Penalty is fatally flawed because: (1) it includes four separate theories of intent or mental state without providing a factual basis; (2) the allegation of future dangerousness is too vague; (3) the allegation of various other criminal activity is too vague; and (4) the alleged non-statutory aggravating factor of victim impact is overly broad. The Government argues the Notice of Intent to Seek the Death Penalty is not constitutionally or statutorily defective.

The Court has already determined that the Government's Notice of Intent to Seek the Death Penalty satisfies the constitutional and statutory requirements of adequate notice. The Court declines to re-examine this issue, and instead, incorporates by reference its findings of September 8, 2008. (DE 467). The Court considers Defendant's other allegations concerning the Notice of Intent to Seek the Death Penalty below.

(1). Four Separate Theories of Intent:

The Court rejects Defendant's argument that the Government fails to provide adequate notice to him, thereby violating his constitutional rights, because it has alleged "all four mental states . . .rather than identifying the applicable one" in the Notice of Intent to Seek the Death Penalty. Despite Defendant's argument to the contrary, the Notice of Intent to Seek the Death Penalty, provides adequate notice as to what Defendant must

be prepared to defend. The Notice of Intent to Seek the Death Penalty states in pertinent

part:

> "1. Intentional killings.
>
> Defendant, Daniel Troya intentionally killed Luis Damian Escobedo [counts 6 and 7], Luis Julian Escobedo [counts 6 and 8], Yessica Guerrero Escobedo [counts 6 and 9], and Jose Luis Escobedo [counts 6 and 10]. Title 18, United States Code, Section 3591(a)(2)(A).
>
> 2. Intentional Infliction of Serious Bodily Injury.
>
> Defendant, Daniel Troya intentionally inflicted serious bodily injury which resulted in the deaths of Luis Damian Escobedo [counts 6 and 7], Luis Julian Escobedo [counts 6 and 8], Yessica Guerrero Escobedo [counts 6 and 9], and Jose Luis Escobedo [counts 6 and 10]. Title 18, United States Code, Section 3591(a)(2)(B).
>
> 3. Intentional Participation in Act Contemplating Lethal Force.
>
> Defendant, Daniel Troya intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Luis Damian Escobedo [counts 6 and 7], Luis Julian Escobedo [counts 6 and 8], Yessica Guerrero Escobedo [counts 6 and 9], and Jose Luis Escobedo [counts 6 and 10] died as a direct result of the act. Title 18, United States Code, Section 3591(a)(2)(C).
>
> 4. Intentional Engagement in Violent Act Constituting Reckless Disregard
>
> For Human Life. Defendant, Daniel Troya intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Luis Damian Escobedo [counts 6 and 7], Luis Julian Escobedo [counts 6 and 8], Yessica Guerrero Escobedo [counts 6 and 9], and Jose Luis Escobedo [counts 6 and 10] died as a direct result of the act. Title 18, United States Code, Section 3591(a)(2)(D)."

(DE 311).

This case involves four separate murders. The Government has placed Defendant on notice that it intends to prove that he committed four "intentional killings." As a threshold issue, the Court finds that the Government has tracked the statutory language of 18 U.S.C. § 3591(a)(2)(A)-(D) in the Special Findings and the Notice of Intent to Seek the Death Penalty and informed Defendant that it intends to prove that he committed the capital offenses alleged in the Third Superseding Indictment with a mental state of mind to commit an intentional killing, to intentionally inflict serious bodily injury, to intentionally participate in an act contemplating lethal force, and to commit an intentional engagement in a violent act constituting reckless disregard for human life.

As the Government correctly points out, the mens rea requirement of the FDPA serves a gatekeeping function. The statutory scheme of the FDPA narrows the class of death-eligible defendants at two distinct phases of the penalty process. The first narrowing process occurs under sections 3591(a)(2)(A)-(D). At this stage, the jury must find that the defendant "acted with intent." Minerd, 176 F. Supp. 2d at 441. These intent factors are not aggravators to be weighed against mitigating factors. Id. Instead, they provide a "preliminary qualification threshold" which serves to narrow the class of death-eligible defendants. Id. (citing United States v. Webster, 162 F.3d 308,355 (5 th Cir. 1998)); accord, Cooper, 91 F.Supp.2d at 109-10.

To the extent that Defendant argues that the Government's Notice of Intent to Seek the Death Penalty impermissibly contains four separate mental states, the Court finds Defendant's argument without merit. As explained above, the mens rea requirement (section 3591) of the FDPA serves a gatekeeping function, it does not set out aggravating factors which the jury must weigh. Courts which have addressed this issue under the statutory framework of the FDPA have found that the inclusion of multiple mental states

in a notice of intent to seek the death penalty does not defeat Defendant's constitutional rights. See Cooper, 91 F. 2d at 109-10 (rejecting defendant's argument that the constitution requires the government to select which of the four intent factors it relies upon); Webster, 162 F.3d at 354-355 (finding that because the intent factors are not aggravating factors which the jury must weigh, multiple mental states submitted to the jury during their preliminary qualification threshold inquiry do no skew the jury's finding); United States v. Jackson, 327 F.3d 273, 300-01 (4th Cir. 2003)(holding that the court did not skew weighing process towards death penalty by allowing jury to find and consider all four intent factors because intent is a threshold matter, without which defendant would not be death penalty eligible, and is not an aggravating circumstance). The Court finds that the inclusion of multiple mental states in the Notice of Intent to Seek the Death Penalty does not violate Defendant's constitutional rights. Additionally, the Court finds that the inclusion of multiple mental states does not skew the process towards the death penalty because intent is a preliminary, threshold matter and not an aggravating factor.

(2).    Future Dangerousness - Vagueness Challenge:

Defendant argues that the non-statutory aggravating factor of "future dangerousness" alleged by the Government in its Notice of Intent to Seek the Death Penalty is too vague to withstand constitutional scrutiny. The Defendant raised essentially the same issue in his motion for reconsideration of the Special Administrative Measures governing the conditions of his confinement (DE 397). In his prior motion, Defendant sought the specific evidence the Government will rely upon in support of the non-statutory aggravating factor of future dangerousness. The Court determined that Defendant's request was not supported in law or fact. Additionally, the Court noted that although the Government was not required to provide Defendant with the specific evidence supporting

its allegation of "future dangerousness," the Government did provide Defendant with specifics in its Notice of Intent to Seek the Death Penalty, and through its extensive discovery responses. This Court declines to re-examine this issue. Accordingly, the Court's Order (DE 465) of September 3, 2008, finding that "[t]he Government has satisfied its statutory and constitutional responsibility by providing Defendant with adequate notice that it intends to rely upon the aggravating factor of future dangerousness in support of Defendant's eligibility for the death penalty" is adopted and incorporated by reference herein.

Additionally, the Court finds that "future dangerousness" as conceptually used by the Government as a non-statutory aggravating factor justifying Defendant's eligibility for the death penalty is not vague. The Supreme Court has explained that "ensuring that a sentence of death is not so infected with bias or caprice" is its controlling objective when examining eligibility and selection factors for vagueness. Tuilaepa v. California, 512 U.S. 967, 973 (1994). The "vagueness review, however, is quite deferential." Id. (internal quotations omitted). "As long as an aggravating factor has a core meaning that criminal juries should be capable of understanding, it will pass constitutional muster." Id. An aggravating factor which makes a defendant eligible for the death penalty must meet two requirements to be constitutionally sufficient. Id. at 972. First, it must not be constitutionally vague. Id. Second, it must not apply to every defendant convicted of murder. Id. To withstand the vagueness analysis, a factor needs some "common-sense core of meaning . . . that criminal juries should be capable of understanding." Id. at 975.

In the present case, the Government informs the Defendant in its Notice of Intent to Seek the Death Penalty that it intends to rely upon Defendant's continuing pattern of violence, escape risk and institutional misconduct, and lack of remorse, to support the non-

statutory aggravating factor of future dangerousness. The Notice of Intent to Seek the

Death Penalty states in pertinent part:

> "1. Future Dangerousness of the Defendant.
>
> The defendant, Daniel Troya, is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least, one or more of the following:
>
> a. Continuing Pattern of Violence
>
> The defendant has engaged in a continuing pattern of violence, attempted violence, and threatened violence, including at least, the crimes alleged against defendant in the Third Superseding Indictment.
>
> b. Escape Risk and Institutional Misconduct
>
> The defendant poses a future danger to the lives and safety of other persons, as demonstrated by prior institutional misconduct, including, but not limited to, prior escape from prison.
>
> c. Lack of Remorse
>
> The Defendant has demonstrated a lack of remorse for the capital offenses committed in this case, as demonstrated by defendant's statements and actions during the course of, and following the offenses, alleged in the Third Superseding Indictment."

(DE 311).

As pled, the Government's allegation of Defendant's "future dangerousness" informs

Defendant with particularity as to what he has to defend, while at the same time providing

the jury with a "common-sense core of meaning" as to the concept of "future

dangerousness." Accordingly, the Court finds that the term "future dangerousness" is not

void for vagueness.

(3). Non-Statutory Aggravating Factor of "Uncharged Murders, Attempted Murders, and Other Serious Acts of Violence:"

Here, Defendant contends that the non-statutory aggravating factor of "Uncharged

Murders, Attempted Murders, and Other Serious Acts of Violence" ("Other Serious Acts")

alleged by the Government in its Notice of Intent to Seek the Death Penalty fails to

withstand constitutional scrutiny because it is "too broad and vague." In support of this

contention, Defendant submits that the Government "contemplates a trial by ambush"

because "no specific crimes are set forth in the notice." In Response, the Government

states that well in advance of the instant Motion, it provided Defendant with specific notice

of "these other crimes in detail" in its discovery responses. The record reveals that on

March 7, 2008 (DE 398-2) the Government provided Defendant with the following

information concerning Defendant's involvement in other uncharged crimes:

> "(a) that Richardo Sanchez and Daniel Troya were both
> involved in a shooting at 1305 Suwanee Drive, Apartment B,
> West Palm Beach, Florida on April 28, 2006. The results of
> the ballistics examination recently concluded are enclosed
> with this notice. A person was wounded in this shooting.
>
> (b) that Richardo Sanchez and Daniel Troya were both
> involved in a shooting at 1901 Mercer Avenue, West Palm
> Beach, Florida on April 28, 2006. The results of ballistics
> examination recently concluded are enclosed with this notice.
> A person was wounded in this shooting.
>
> You are further notified that the government intends to
> introduce evidence that on September 11, 2006, defendants
> Varela, Troya and Sanchez were involved in a shooting along
> the 1300 block of Haverhill Road in suburban West Palm
> Beach. A person was wounded in this shooting."

(DE 398-2).

Here, despite Defendant's argument to the contrary, the Government has provided

Defendant with specific information concerning the Other Serious Acts upon which the

Government intends to rely in support of justifying a death sentence. Importantly, case law

supports the presentation of such evidence in the penalty phase of a capital case. see

Tuilaepa v. California, 512 U.S. 967, 976-77(1994)(approving as an aggravating factor

defendant's prior participation in unadjudicated violent criminal acts); see also United

States v. Hall, 152, F. 3d 381, 403-04 (5th Cir. 1998); United States v. Davis, 912 F. Supp.

938, 948-49 (E.D. La. 1996); United States v. Beckford, 964 F. Supp. 993, 997-1000 (E.D. Va. 1997). Accordingly, the Court finds Defendant's facial challenge of the non-statutory aggravating factor of "Uncharged Murders, Attempted Murders, and Other Serious Acts of Violence" completely without merit.

The FDPA provides that information may be excluded at the sentencing hearing, "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Accordingly, decisions as to the admissibility of specific evidence at trial and sentencing rests with the district judge. The Court finds Defendant's as applied challenge of the non-statutory aggravating factor of "Uncharged Murders, Attempted Murders, and Other Serious Acts of Violence" completely without merit at this point of the proceeding.

(4).    Non-Statutory Aggravating Factor of Victim Impact:

The Defendant moves to strike the non-statutory aggravating factor of "Victim Impact Evidence" from the Government's Notice of Intent to Seek the Death Penalty on the ground that it is overly broad and denies him fair notice. The Government argues that Defendant's request should be denied because the FDPA allows victim impact evidence, and, the Supreme Court "has countenanced it, and the evidence does not violate the Eight Amendment."

The Notice of Intent to Seek the Death Penalty (DE 311) states in pertinent part:

> "Victim Impact Evidence.
>
> a. The defendant, Daniel Troya caused injury, harm, and loss to the family of Luis Damian Escobedo as evidenced by his personal characteristics as a human being and the impact of his death on his family members.
>
> b. The defendant, Daniel Troya caused injury, harm, and loss to the family of Luis Julian Escobedo as

> evidenced by his personal characteristics as a human
> being and the impact of his death on his family
> members.
>
> c. The defendant caused injury, harm, and loss to the
> family and friends of Yessica Guerrero Escobedo as
> evidenced by her personal characteristics as a human
> being and the impact of her death on her family and her
> friends.
>
> d. The defendant caused injury, harm, and loss to the
> family and friends of Jose Luis Escobedo as evidenced
> by his personal characteristics as a human being and
> the impact of his death on his family and his friends."

The FDPA expressly authorizes the use of victim impact evidence as follows:

> "The factors for which notice is provided under this
> subsection may include factors concerning the effect of
> the offense on the victim and the victim's family, and
> may include oral testimony, a victim impact statement
> that identifies the victim of the offense and the extent
> and scope of the injury and loss suffered by the victim
> and the victim's family, and any other relevant
> information. The court may permit the attorney for the
> government to amend the notice upon a showing of
> good cause."

18 U.S.C. § 3593.

The Supreme Court holds that there is no *per se* constitutional bar on victim impact

evidence in capital sentencing. See Payne v. Tennessee, 501 U.S. 808, 827 (1991)(holding

"that if a State decides to permit consideration of this evidence, the Eighth Amendment

erects no per se bar"). As long as victim impact factors "are used to direct the jury to the

individual circumstances of the case" they do not disturb the principle "of common

importance at the eligibility and selection states that 'the process is neutral and principled

so as to guard against bias and caprice in the sentencing decision.'" Jones v. United States,

527 U.S. 373, 402 (1999)(internal quotations omitted). In Jones, the Supreme Court

explained the rationale and importance of victim impact evidence in a capital context:

> "[a]n aggravating factor can be overbroad if the
> sentencing jury fairly could conclude that an
> aggravating circumstance applies to every defendant
> eligible for the death penalty. We have not, however,
> specifically considered what it means for a factor to be
> overbroad when it is important only for selection
> purposes and especially when it sets forth victim
> vulnerability or victim impact evidence. Of course,
> every murder will have an impact on the victim's family
> and friends and victims are often chosen because of
> their vulnerability. It might seem, then, that the factors
> . . . apply to every eligible defendant and thus fall
> within the Eighth Amendment's proscription against
> overbroad factors. But that cannot be correct; if it were,
> we would not have decided Payne as we did. Even
> though the concepts of victim impact and victim
> vulnerability may well be relevant in every case,
> evidence of victim vulnerability and victim impact in a
> particular case is inherently individualized. And such
> evidence is surely relevant to the selection phase
> decision, given that the sentencer should consider all
> of the circumstances of the crime in deciding whether
> to impose the death penalty."

Jones, 527 U.S. at 401-02. (internal quotations omitted).

In the present case, the Court finds that the non-statutory aggravating factor of

Victim Impact Evidence alleged by the Government passes constitutional muster because

it directs the fact finder to the individual circumstances of the case, and provides a

common-sense core meaning that the fact finder should be capable of understanding.

## Section VI.
## Four Mental States Alleged in the Notice of Intent to Seek the Death Penalty

Here, Defendant essentially re-litigates the issue he raised in section V of the instant

Motion, that is, whether it is permissible to allege four "mental states" in the Notice of Intent

to Seek the Death Penalty. The Court declines to reconsider the issue again as Defendant

has provided no separate basis to warrant such an inquiry. For completeness of the record,

the Court finds that the inclusion of multiple mental states in the Notice of Intent to Seek the Death Penalty does not defeat Defendant's constitutional rights. United States v. Jackson, 327 F.3d 273, 300-01 (4th Cir. 2003); Cooper, 91 F. Supp. at 109-10; Minerd, 176 F. Supp. 2d at 440-41; see also Section V(1) supra.

## Section VII.
### Challenges to the Statutory Aggravating Factors

In this section, the Defendant challenges the sufficiency of certain statutory aggravating factors pled by the Government in its Notice of Intent to Seek the Death Penalty. Defendant presents the following issues: (1) whether the statutory aggravating factor of pecuniary gain sufficiently narrows the class of murders to which it applies; (2) whether the statutory aggravating factor of substantial planning and premeditation is duplicative and vague; (3) whether the statutory aggravating factor of vulnerability of victims should be narrowed; (4) whether the statutory aggravating factor of multiple killings is duplicative and vague; and (5) whether the statutory aggravating factors should be allowed to go to the jury in the absence of judicial screening of the specific evidence the Government intends to offer in support of the factor.

(1). Pecuniary Gain:

Defendant submits that the statutory aggravating factor of pecuniary gain is inapplicable in the present case because "every carjacking is committed by definition in the expectation of something of value," and, in the instant case, the facts presented by the Government do not demonstrate a nexus between pecuniary gain and the murders. The Government maintains that "there can be no doubt that the aggravating circumstance of

pecuniary gain alleged by the Government in the Third Superseding Indictment . . . and, in its Notice of Intent to Seek the Death Penalty, tracks the statutory language and is sufficient to pass constitutional muster in that it narrows the class of persons eligible for the death penalty."

Here, Defendant's challenge is not to the constitutionality of the aggravating factor but to the sufficiency of the evidence supporting it. Defendant's recurring theme throughout this Omnibus Motion is that the Government has failed to provide sufficient notice in the Third Superseding Indictment, Special Findings, and Notice of Intent to Seek the Death Penalty. However, Defendant consistently broadens the concept of "notice" to include an obligation for the Government to provide him with the specific evidence it will rely upon at the capital sentencing hearing to justify the death penalty. No such obligation exists by law. Higgs, 353 F.3d at 325; Battle, 173 F.3d at 1347. The Court finds that the Third Superseding Indictment, Special Findings, and Notice of Intent to Seek the Death Penalty informs Defendant and provides fair notice that the Government intends to rely upon the aggravating factor of pecuniary gain to justify a death sentence.

The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factors the Government intends to rely on to justify the death penalty, not notice of the specific evidence that will be used to support it. Higgs, 353 F.3d at 325. "The Government is not required to provide specific evidence in its notice of intent." Battle, 173 F.3d at 1347. Notice of an aggravating factor that the Government intends to rely on as grounds for the death penalty "is different from notice of specific evidence." Id. "A notice of intent [to seek the death penalty] [is] permissible even though 'it list[ed] only the aggravating circumstances and provide[d] no detail about the evidence the government intend[ed] to offer in support." Id.(citing Nguyen, 928 F.Supp. at 1545 - 46). Accordingly,

the Court finds that the Government has fulfilled its statutory responsibility and provided Defendant with adequate notice that one of the aggravating factors it intends to rely upon in support of Defendant's eligibility for the death penalty is pecuniary gain.

(2).    Substantial Planning and Premeditation:

Defendant argues that his Fifth and Eighth Amendment rights are violated because the statutory aggravating factor of Substantial Planning and Premeditation is overly broad and duplicative of the underlying crime. In support of his claim Defendant alleges that the phrase "planning and premeditation" is duplicative and over-broad of the underlying crime because it does not narrow the class of murders eligible for the death penalty, and the use of the word "substantial" as a modifier in this factor is vague, over-broad, and does not narrow the class of murders eligible for the death penalty. The Government argues that the statutory aggravator is constitutional and that the word "substantial" is "neither vague or over-broad." The Government further states that the aggravator is not improperly duplicative.

The Notice of Intent to Seek the Death Penalty states it pertinent part:

> "Substantial planning and premeditation.
>
> The defendant, Daniel Troya, committed the offense after substantial planning and premeditation to cause the deaths of Luis Damian Escobedo [counts 6 and 7], Luis Julian Escobedo [counts 6 and 8], Yessica Guerrero Escobedo [counts 6 and 9], and Jose Luis Escobedo [counts 6 and 10]. Title 18, United States Code, Section 3592(c)(9)."

(DE 311).

The Court finds Defendant's challenge to the "Substantial Planning and Premeditation" aggravating factor without merit for the reasons set forth below.

First, the statutory factor of "Substantial Planning and Premeditation" relied upon by the Government in its Notice of Intent to Seek the Death Penalty is specifically

enumerated in the list of aggravating factors pursuant to the FDPA. See 18 U.S.C. §3592(c)(9). Second, the Court finds that the phrase "Planning and Premeditation" as used in this statutory factor is not vague, duplicative, or over-broad. This Court agrees with the reasoning of the Fifth Circuit in United States v. Bourgeois, finding that the statutory aggravating factor of Substantial Planning and Premeditation is not unconstitutionally over-broad and vague because "these factors are based on FDPA section 3592(c)(9), and they obviously narrow the class of murderers who could be eligible for the death penalty because not every murder involves substantial planning or premeditation." United States v. Bourgeois, 423 F.3d 501, 511 (5th Cir. 2005). Third, the Court finds Defendant's argument that the aggravating factor of Substantial Planning and Premeditation is duplicative without merit. Defendant fails to allege facts necessary to support this claim. Defendant does not state exactly how this aggravating factor duplicates an underlying crime charged against the Defendant in the Third Superseding Indictment. Additionally, the Government correctly notes that premeditation is not a required proof of a violation of Section 924(j).

Last, the Court finds that the word "substantial" as used in this aggravating factor is not vague or over-broad. The Court reminds Defendant that to "pass constitutional muster" an aggravating factor, such as Substantial Planning and Premeditation must have some "commonsense core of meaning . . . that criminal juries should be capable of understanding." Tuilaepa, 512 U.S. at 973,975. Courts which have considered the use of the word "substantial" in this very context have found it to pass constitutional muster. Natson, 444 F. Supp. 2d at 1306. In Tipton, the Fourth Circuit determined that the use of the word "substantial" to modify "planning and premeditation" does not render the term unconstitutional, "but instead, conveys with adequate precision a commonly understood

meaning of 'considerable,' or 'more than adequate,' thereby ensuring that the []factor served sufficiently to channel the jury's discretion in assessing eligibility for the death penalty." United States v. Tipton, 90 F.3d 861, 895-96 (4th Cir. 1996); accord United States v.McCullah, 76 F.3d 1087,1110-11 (10th Cir. 1996).

The Court concludes that the word "substantial" appearing in the phrase "Substantial Planning and Premeditation" is consistent with its meaning of "considerable in quantity" and "significantly great" and, is in accord with its commonsense meaning, and, provides the fact finder with a precise modifier that is easy to understand. See Merriam-Webster Online Dictionary (2008), http://merriam-webster.com/dictionary. Accordingly, the Court finds that the statutory aggravating factor of Substantial Planning and Premeditation is not overly broad or vague.

(3).    Vulnerability of Victims:

Defendant moves the Court to dismiss the statutory aggravating factor of "Vulnerability of Victims," or, in the alternative to require that the Government narrow the scope of this aggravator. In support, Defendant contends that the Government has failed to show a nexus between the victim's particular vulnerability and the crime.    The Government argues that the Defendant once again confuses "the sufficiency of the pled aggravating circumstance with the evidence necessary to support this statutory aggravator."

Victim vulnerability is an expressly authorized aggravating factor under the FDPA. This factor is set forth in 18 U.S.C. § 3592(c)(11) which states "[v]ulnerabilty of victim –[t]he victim was particularly vulnerable due to old age, youth, or infirmity." The Special Findings and the Notice of Intent to Seek the Death Penalty provide Defendant with the following notice:

"(3). Vulnerability of Victims :

a. The victim, Luis Damian Escobedo [counts 6 and 7],
age three years, was particularly vulnerable due to youth.
Title 18, United States Code, Section 3592(c)(11).

b. The victim, Luis Julian Escobedo [counts 6 and 8], age
four years, was particularly vulnerable due to youth. Title
18, United States Code, Section 3592(c)(11)."

(DE 305)(DE 311).

Here, the Special Findings and the Notice of Intent to Seek the Death Penalty,
tracks the statutory language and informs Defendant that the Government intends to rely
upon the "Vulnerability of the Victims as an aggravating factor to justify the death penalty.
Essentially, Defendant's argument is that the Government is obligated to provide not only
notice of the aggravating factor, but also notice of the evidence it intends to rely upon to
prove the factor.  The Government has no such obligation. Battle, 173 F.3d at 1347.
"Although there is a right to advance notice of the charges, there is no extant constitutional
right to advance notice of the evidence to prove such charges in a capital sentencing
hearing." Gray v. Netherland, 518 U.S. 152, 166-70 (1996). Defendant's challenge to this
aggravating factor is to the sufficiency of the Government's proof and not to the sufficiency
of the notice provided. Accordingly, the Court finds that the Government has satisfactorily
pled the statutory aggravating factor of "Vulnerability of Victims."

(4).   Multiple Killings:

Defendant moves to strike the statutory aggravating circumstance of "multiple
killings" as duplicative and unconstitutionally vague. The Government submits that
Defendant's argument is "specious."   The Government states that the "statutory
aggravating circumstances are properly charged, not constitutionally over-broad or vague,"
and Defendant's "motion to strike them is inappropriate." In support, the Government relies
upon Minerd, 176 F.Supp. 2d at 447-48 (finding pursuant to the FDPA that the multiple

killing aggravator was not duplicative of the gateway mental status factors). Defendant cites no facts or law in support of his contention. Accordingly, the Court finds Defendant's argument without factual or legal merit.

(5).    Judicial Screening of Government's Statutory Aggravating Factors Evidence:

In this section, Defendant presents a rambling, confusing argument concerning the Court's obligation to discharge its duty to ensure that evidence presented at the sentencing hearing comports with all statutory and constitutional requirements. However, when the Court peels away Defendant's verbosity, what Defendant actually seeks is discovery. Once again, Defendant contends that the culprit is the Notice of Intent to Seek the Death Penalty. Defendant argues it is "vague" and "uninformative." The relief Defendant seeks is for the Court to dismiss the Government's Notice of Intent to Seek the Death Penalty. Alternatively, Defendant asks the Court to order the Government to provide Defendant with a "fairly detailed proffer" of the evidence it intends to rely upon in support of the death penalty. Once again, what Defendant seeks is discovery. At this juncture of the proceedings, the Government has no obligation to disclose to the Defendant the specific evidence it intends to rely upon at the capital sentencing hearing. Battle, 173 F.3d at 1347. Accordingly, the Court rejects Defendant's pretrial request for judicial screening of the Government's evidence supporting the statutory aggravating factors.

## Section VIII.
## Non-Statutory Aggravating Factors

Here, Defendant argues that the non-statutory aggravating factors must be dismissed. Specifically, Defendant contends that (1) the non-statutory aggravating factors permit arbitrary and capricious death sentences in violation of the Eighth and Fourteenth

Amendments; (2) the non-statutory aggravating factor of future dangerousness is invalid because it is "generic" and "broad" and Congress implicitly rejected the use of this factor; (3) Defendant's alleged "lack of remorse" which supports the Government's alleged future dangerousness aggravator violates the Defendant's Fifth Amendment, Sixth Amendment, and Eighth Amendment rights; (4) the non-statutory aggravating factor of uncharged murders, attempted murders and other serious acts of violence should be dismissed because only criminal conduct that has resulted in conviction for crimes specifically listed in section 3592(c) may qualify as aggravating factors. The Government submits that Defendant's contentions are wholly without merit and duplicative of arguments presented in prior sections of the instant Motion.

(1).     Facial Constitutional Challenge to the Non-Statutory Aggravating Factors:

Defendant cites no authority in support of the proposition that the non-statutory aggravating factors are arbitrary and capricious, and thus, are violative of the constitution. To the contrary, Defendant's argument that the FDPA violates the Eighth Amendment because it authorizes the Government to "unilaterally expand the list of aggravating factors on a case-by-case basis" injecting arbitrariness and capriciousness into the sentencing process - has been rejected by federal courts. United States v. Paul, 217 F.3d 989, 1003 (8th Cir. 2000); United States v. Jones, 132 F.3d 232, 239-40 (5th Cir. 1998). Both Paul and Jones hold that "the prosecutor's authority to define non-statutory aggravating factors is a constitutional delegation of Congress' legislative power." Id. In Jones, the Fifth Circuit reasoned that the government was "adequately limited" and guided by "intelligible principles" to define non-statutory aggravating factors. Jones, 132 F.3d at 239. The limiting, intelligible principles to which the Government must conform include the FDPA, Supreme Court death penalty jurisprudence, the district court's role as a gatekeeper against the

admission of impermissibly prejudicial information, and the FDPA's express requirement that at least one statutory aggravating factor be unanimously found by the jury beyond a reasonable doubt. Id. at 240. These limiting, intelligible principles guide the government to constitutionally exercise the delegated authority to define non-statutory aggravating factors. Id. This Court finds the reasoning of the Fifth and Eighth Circuits sound. Accordingly, the Court finds Defendant's argument without merit.

(2). Future Dangerousness:

Once again, Defendant mounts a challenge to the non-statutory aggravating factor of future dangerousness. Defendant's instant allegation is essentially the same argument that Defendant raised earlier in this Motion and in his other pleadings. That is, that the Government has not provided him with sufficient notice as to his future dangerousness because it has failed to "allege some concrete facts with dates and times - or provide a minimal outline of its theory - so that the defense may know the nature of the claim." The Court refuses to re-examine this issue. Defendant is directed to Section V, subpart 2 of this Report and Recommendation, and, to the Court's Order of September 3, 2008 (which has been incorporated by reference in this Report and Recommendation) for the Court's findings as to the constitutionality of this non-statutory aggravating factor, and, to the statutory and constitutional sufficiency of the Government's notice to Defendant as to this factor.

As to Defendant's contentions concerning the reliability of predictions of future dangerousness, and the unfair prejudicial nature of the preponderance of future dangerous claims - the FDPA expressly allows the trial judge to exclude evidence if its probative value is outweighed by the danger of creating unfair prejudice, or if it confuses the issues or misleads the jury. This Court finds these constitutional safeguards sufficient procedural

protections for evidentiary reliability. Last, the Court declines to consider any specific issues as to the admissibility of specific evidence. Decisions as to the admissibility of specific evidence at trial and sentencing rest with the district judge.

(3).    Lack of Remorse:

Defendant moves the Court to dismiss the non-statutory aggravating factor of future dangerousness because the Government supports this aggravator with an allegation as to Defendant's "lack of remorse." Defendant argues that the allegation that he "lacks remorse" is based upon "his silence." Defendant contends that the Government's Notice of Intent to Seek the Death Penalty "does not cite a single instance" which demonstrates his "lack of remorse." According to the Defendant, the Government's failure to disclose the proof upon which it intends to prove this factor during the penalty phase, amounts to an acknowledgment by the Government that it intends to use his silence in support of this aggravating factor. This argument is without merit because at this juncture of the proceedings, the Government has no obligation to disclose to the Defendant the specific evidence it intends to rely upon at the capital sentencing hearing. Battle, 173 F.3d at 1347.

To the extent that Defendant raises a *per se* constitutional challenge concerning the use of lack of remorse as a factor at the sentencing phase, the Court finds this argument without merit for the reasons set forth below.

Supreme Court jurisprudence holds that "[a]ny lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes is admissible in aggravation, subject to the notice provisions of the statute." Zant v. Stephens, 462 U.S. 862, 885 n.22 (1983). Other federal courts which have considered this issue have also found that lack of remorse can be used to support the non-statutory aggravating factor of future dangerousness. See, e.g. United

States v. Roman, 371 F. Supp. 2d 36, 50 (D.P.R. 2005)(finding that affirmative conduct of the defendant after he committed the crime, including boastfulness, to be indicative of lack of remorse and supportive of the non-statutory aggravating factor of future dangerousness); United States v. Davis, 912 F. Supp. 938, 946 (E.D. La. 1996)(upholding the admissibility of lack of remorse as evidence demonstrating future dangerousness). Accordingly, the Court rejects Defendant's contentions that the non-statutory aggravator of lack of remorse is *per se* unconstitutional. Zant, 462 U.S. at 886; Roman, 371 F. Supp. 2d at 50.

Last, the Court declines to consider any specific issues as to the admissibility of specific evidence concerning this factor. As to Defendant's speculation that the only evidence the Government will rely upon in support of his lack of remorse is his failure to make a statement, we can only guess what evidence the Government will rely upon at the sentencing hearing. The FDPA provides that information may be excluded at the sentencing hearing, "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Accordingly, decisions as to the admissibility of specific evidence at trial and sentencing rest with the district judge.

(4).    Uncharged murders, Attempted Murders and Other Serious Acts of Violence

In this subpart, Defendant essentially restates and re-litigates the Government's use of this non-statutory aggravating factor. Defendant raises this issue in Section V of the instant Motion, and the Court has already addressed this non-statutory aggravating factor's constitutionality in this Report and Recommendation. In Section V, Defendant argues that the Other Serious Acts factor should be dismissed because it is "too vague and over-broad" thus creating "trial by ambush" for Defendant. Here, Defendant argues the contrary.

Defendant's instant argument contends that pursuant to "Section 3592(c)" Other Serious Acts, "is a very narrow, limited factor" which can include only "six types of convictions" specifically enumerated in the statute. Additionally, Defendant argues that evidence of uncharged criminal activity in a criminal sentencing proceeding results in biased and unreliable sentencing, and that uncharged crimes evidence should be excluded because its probative value is far outweighed by the danger of unfair prejudice and by the danger of confusing the jury. The Government argues that case law "clearly supports the presentation" of evidence of uncharged murders, attempted murders and other serious acts of violence.

### Limitation on Other Serious Acts:

Defendant has misplaced reliance on United States v. Diaz, in support of his argument that the Other Serious Acts aggravating factor is limited to only "the six previous convictions" enumerated in 18 U.S.C. 3592(c)(1)-(16). In Diaz, the Court specifically states that the non-statutory aggravating factor of "committed or participated in additional violent acts" is "certainly relevant for the jury's deliberations." United States v. Diaz, 912 F. Supp. 938, 947 (E.D. La. 1996). Defendant asks this Court to extends the holding in Diaz, of how the statutory aggravating factors provide guidance as to the relevancy of the non-statutory aggravating factors, to form a new rule limiting the consideration of other serious acts of violence. Id. at 944. Diaz does not create such a new rule. Id. Nor will this Court make such a holding.

For completeness of the record, the Court reiterates its finding in Section V of this Report and Recommendation as to the non-statutory aggravating factor of Other Serious Acts. The Court finds that case law supports the presentation of evidence demonstrating

uncharged murders, attempted murders and other serious acts of violence evidence in the penalty phase of a capital case. See Tuilaepa v. California, 512 U.S. 967, 976-77 (1994)(approving as an aggravating factor defendant's prior participation in unadjudicated violent criminal acts); see also United States v. Hall, 152, F. 3d 381, 403-04 (5th Cir. 1998); United States v. Beckford, 964 F. Supp. 993, 997-1000 (E.D. Va. 1997). United States v. Davis, 912 F. Supp. 938, 948-49 (E.D. La. 1996). Defendant fails to present in this section, any case law or facts, warranting reconsideration of the Court's finding.

## Uncharged Criminal Activity is Biased, Unreliable, and Unfairly Prejudicial:

Once again, the Court declines to consider any specific issues as to the admissibility of specific evidence which the Government intends to rely upon in support of its allegation of Other Serious Acts. The FDPA provides that information may be excluded at the sentencing hearing, "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Accordingly, decisions as to the admissibility of specific evidence at trial and sentencing rest with the district judge .

## RECOMMENDATION

For the reasons stated above, this Court recommends to the District Court that Defendant's Omnibus Motion To Declare The Federal Death Penalty Act Unconstitutional, To Dismiss The "Special Findings" From The Indictment, And To Strike The Notice Of Intent To Seek The Death Penalty (DE 375), filed May 30, 2008, be DENIED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T. K. Hurley, within ten (10) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure

to file timely objections may limit the scope of appellate review of factual findings contained herein. See United States v. Warren, 687 F.2d 347, 348 (11th Cir. 1982) cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this ___ day of September, 2008.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Daniel T.K. Hurley
All counsel of record